GATEWAY CITY TRANSFER COMPANY, Appellant, vs. PUBLIC
SERVICE COMMISSION, Respondent.

*September 17—October 12, 1948.*

400

*Philip H. Porter* of Madison, attorney, and *Daniel H. Grady* of Portage of counsel, for the appellant.

*James Ward Rector,* counsel, for the respondent Public Service Commission.

For the respondent Motor Transport Company there was a brief by *Arthur M. Sells* and *Cornelius T. Young,* both of Milwaukee, and oral argument by *Mr. Young.*

*Glenn W. Stephens* of Madison, for the respondents Earl F. Schultz, Northern Transportation Company, Yellow Truck Lines, Inc., and West Bend Transit & Service Company.

*R. W. Peterson* of Madison, for the respondent Timm Transit.

ROSENBERRY, C. J.    The first contention made by petitioner is that the conclusion of the commission was affected by error in holding that a presumption against competition between common motor carriers was created by ch. 194 of the

statutes. The chapter relates to motor transportation. This contention is based upon the following statement found in the opinion of the commission:

"Counsel for applicant argue that the statutes set up a presumption in favor of competition. The contrary is the fact. Section 194.23 requires that 'before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served. . . .' Section 194.18 makes it the commission's duty, among other things, so to regulate common motor carriers as to 'prevent unnecessary duplication of service between such common motor carriers or between them and the lines of competing steam and electric railroads.' The burden is upon applicant under section 194.23 to prove that additional transportation facilities are needed by the public. Once applicant has met this burden, it is for existing public carriers in the affected territory to prove that the grant of the application in whole or in part will interfere unduly with their proper rendition of adequate service."

We can discover nothing in this discussion bearing upon the question of presumption in favor of either monopoly or competition. It relates to the procedure, which the commission correctly stated. The commission said in effect, in response to the argument of counsel, that the statutes do not set up a presumption in favor of competition. An allegation that the statute does not set up a presumption in favor of competition is not an assertion that the commission favored monopoly or indulged in a presumption in favor of it.

In *Clintonville Transfer Line v. Public Service Comm.* 248 Wis. 59, 67, 21 N. W. (2d) 5, we dealt extensively with the matter of the powers of the Public Service Commission under the statute relating to common motor carriers, but did not deal with the matter of evidence. Sec. 227.10 (1), Stats., provides:

"Agencies shall not be bound by common law or statutory rules of evidence. They shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrele-

vant or unduly repetitious testimony. They shall give effect to the rules of privilege recognized by law. Basic principles of relevancy, materiality and probative force, as recognized by equitable proceedings, shall govern the proof of all questions of fact." ~

Sec. 227.20 (1), Stats., provides that the court may reverse or modify a decision of the commission:

". . . If the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being: . . . (d) unsupported by substantial evidence in view of the entire record as submitted."

By statute, in reviewing administrative decisions the court is to give due weight to the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it. The statute definitely limits the review by the court in matters relating to evidence, to the question whether the finding is supported by substantial evidence or is "(e) arbitrary or capricious." If the decision of the commission is supported by substantial evidence in view of the entire record, then the decision is to be affirmed if not otherwise contrary to law.

Sec. 194.34, Stats., provides:

"The commission, upon the filing of an application for such license, shall have power as the public interest may require, upon a finding of public convenience and necessity . . . to grant or deny the license prayed for . . . and may attach to the exercise of the privilege granted by such license such terms and conditions as in its judgment the public interests may require."

The term "public interest" is a very broad and comprehensive one. It means different things in different connotations. For instance, it is in the public interest that healthy cattle be produced and kept free from disease. *Stickley v. Givens* (1940), 176 Va. 548, 11 S. E. (2d) 631. A proceeding by

the Federal Trade Commission to prevent the use of unfair methods is in the "public interest" if the unfair methods threaten the existence of the potential as well as the existing competition. *Bunte Bros. v. Federal Trade Comm.* (7th Cir. 1940) 110 Fed. (2d) 412. For a large number of illustrations see 35 Words and Phrases (Supp. 1948), p. 25.

Hearings before the Public Service Commission under the Common Motor Carriers Act are not to be treated as civil actions. They are legislative in character and while they are, because of the fact-finding powers of the commission, *quasi-judicial*, nevertheless they operate in the legislative field. When the statute says that on review the decision of the commission may be affirmed if there is substantial evidence to support it, it means exactly what it says. The court is not authorized to inquire where the burden of proof lies further than may be necessary to determine whether there is substantial evidence to support the decision or whether it is capricious or arbitrary. Upon the record the commission is to determine whether in the public interest a certificate of convenience and necessity should be issued.

The term "substantial evidence" has been employed in a considerable number of states, defining the powers of administrative boards and agencies. In *Edison Co. v. National L. R. Board* (1938), 305 U. S. 197, 229, 59 Sup. Ct. 206, 83 L. Ed. 126, the court dealt with this subject authoritatively. The court said:

"The companies contend that the court of appeals misconceived its power to review the findings and, instead of searching the record to see if they were sustained by 'substantial' evidence, merely considered whether the record was 'wholly barren of evidence' to support them. We agree that the statute, in providing that 'the findings of the board as to the facts, if supported by evidence, shall be conclusive,' means supported by substantial evidence. *Washington, V. & M. Coach Co. v. National Labor Relations Board,* 301 U. S. 142, 147. Substantial evidence is more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [citing cases.] We do not think that the court of appeals intended to apply a different test. In saying that the record was not 'wholly barren of evidence' to sustain the finding of discrimination, we think that the court referred to substantial evidence. . . .

"The companies urge that the board received 'remote hearsay' and 'mere rumor.' The statute provides that 'the rules of evidence prevailing in courts of law and equity shall not be controlling.' The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. [citing cases.] But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence."

In 40 Words and Phrases (perm. ed.), p. 499, under the title "Substantial Evidence," and particularly in 1948 Cumulative Annual Pocket Part, p. 62, are to be found many illustrations in cases arising since 1938.

That the term "substantial evidence" does not include the idea of weight of evidence is illustrated very clearly in the final report of the Attorney General's Committee on Administrative Procedure, p. 91, where it is said:

"Suggestions for legislative change in the scope of judicial review have related chiefly to administrative findings of fact. It has been suggested that the scope of review of these findings be enlarged to include inquiry as to whether the findings are supported by the weight of the evidence. Assuming that such a change may be desirable with respect to special administrative determinations, there is serious objection to its adoption for general application.

"In the first place there is the question of how much change, if any, the amendment would produce. The respect that courts have for the judgments of specialized tribunals which have carefully considered the problems and the evidence cannot

be legislated away. The line between 'substantial evidence' and 'weight of evidence' is not easily drawn—particularly when the court is confined to a written record, has a limited amount of time, and has no opportunity further to question witnesses on testimony which seems hazy or leaves some lingering doubts unanswered. 'Substantial evidence' may well be equivalent to the 'weight of evidence' when a tribunal in which one has confidence and which had greater opportunities for accurate determination, has already so decided.

"In the second place the wisdom of a general change to review of the 'weight of evidence' is questionable. If the change would require the courts to determine independently which way the evidence preponderates, administrative tribunals would be turned into little more than media for transmission of the evidence to the courts. It would destroy the values of adjudication of fact by experts or specialists in the field involved. It would divide the responsibility for administrative adjudications."

While the commission in its decision used the term "burden of proof" in stating which party had the duty of proceeding with the evidence, we find no authority in the statute for the dismissal of a petition at the close of the petitioner's evidence. As already stated, the commission does not proceed as a court, and court practice and court rules do not apply to an administrative hearing unless made so to apply by the statute.

Error is assigned on the ground that the trial court did not examine the whole record. Sec. 194.14 (2), Stats., provides:

"Notwithstanding the provisions of chapter 227 the commission, when passing upon an application for a certificate, license or amendment thereto as provided for in this chapter, may, in making its decision thereon, rely on an oral or written summation of the record made by the person who has heard the testimony."

Sec. 227.12, Stats., provides: "Whenever in a contested case it is impracticable for the members of the agency who participate in the decision to hear or read all the evidence, the final decision shall not be made until a summary of the evidence prepared by the person conducting the hearing, together with his recommendations as to the findings of fact and the decision in

the proceeding has been prepared and furnished to each party, and a reasonable opportunity has been afforded to each party to file written exceptions to such summary and proposed findings and decision and to argue with respect to them orally and in writing before all the members who are to participate in the decision. The agency's findings of fact may be made upon the basis of such summary and the filed exceptions thereto as herein provided. The parties may by written stipulation waive compliance with this section."

In cases arising under ch. 194, sec. 194.14 (2), Stats., dignifies the summation of the record made by the person who has heard the testimony and makes it practically equivalent to a finding of the commission unless set aside by the commission on exceptions made by one of the parties, pursuant to the provisions of sec. 227.12. Unless exceptions are made the summation stands. The commission is under the duty of examining the record sufficiently to ascertain whether the exceptions are well taken. If it finds they are, then to modify the summation accordingly.

In this case the parties and the commission proceeded in accordance with the provisions of sec. 227.12, Stats. The examiner made a summary of the evidence with his recommendations, which occupies twenty-nine pages of the record, upon which the statute specifically authorizes the commission to make its findings. Upon a petition for review the matter comes before the circuit court on the record. If the commission in making its findings may rely upon the summation made by the examiner, a review of the commission's findings certainly does not require the court to make an original examination of the evidence. The commission not being required to re-examine the evidence and being authorized to proceed upon the summary and recommendations of the examiner and the exceptions thereto, as provided in sec. 227.12, and the court being limited to a review of the action of the commission, the trial court certainly was under no obligation to re-examine the entire record.

However, in this case the trial court did file an exhaustive opinion which has been of assistance to this court on appeal. The suggestion that the trial court did not fully perform its duty is without foundation in the record.

Sec. 227.20 (1) (d), Stats., provides that the court may reverse the decision of the commission "being unsupported by substantial evidence in view of the entire record as submitted." Petitioner complains that the trial court disposed of the matter as if the statute read "unsupported by any evidence" instead of "unsupported by substantial evidence." As already pointed out, the supreme court of the United States holds that the two phrases mean the same thing. It is also urged by petitioner that the trial court could not reach the conclusion it did without summarizing the evidence. What we have said in regard to the statute authorizing the commission to rely upon the summary made by the examiner in connection with the exceptions thereto filed by the parties, disposes of this objection. As has often been pointed out, on a review based upon the record the court does not retry the case. It is the duty of the trial court to examine the record sufficiently to determine whether the rights of the petitioner have been invaded by an error of the commission.

What has already been said answers to a large extent the argument advanced to the effect that the trial court did not give effect to sec. 227.20 (1), Stats., which provides:

". . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

"(a) Contrary to constitutional rights or privileges; or

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

"(c) Made or promulgated upon unlawful procedure; or

"(d) Unsupported by substantial evidence in view of the entire record as submitted; or

"(e) Arbitrary or capricious."

The petitioner further contends that the commission's finding that the proposed operations of the petitioner, if authorized, would unduly interfere with the ability of existing public carriers to continue the proper rendition of adequate service to the public in the territory proposed to be served, is unsupported by the record. The petitioner did not propose to render service over the entire routes for which it sought a certificate. In Case No. 1, in which it sought to duplicate a part of the service rendered by Timm, petitioner proposed to serve only the larger localities. The granting of the petition would deprive Timm of the more remunerative shipments and leave him to serve the less remunerative. The petitioner is the largest common-motor-carrier operator within the state and already serves a considerable part of the territory covered by its application. It is quite apparent that what it proposes to do is to consolidate the routes over which it is traveling and render additional service thereto, the ultimate effect of which must undoubtedly be to cut down the revenues of those already serving in the same territory. If by reason of the granting of the application the service rendered by Timm would be impaired or rendered inadequate it is clearly within the discretion of the commission to deny the application to that extent. The statute, sec. 194.23, requires the commission, in making its determination, to take into consideration other transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways. An examination of the record discloses that there is substantial evidence to sustain the finding of the commission.

The petitioner contends that the order of the commission leaves one common motor carrier with an exclusive franchise to transact transportation service between two definite points, and therefore creates a monopoly, contrary to law.

In the brief the petitioner states the proposition thus :

"The court erred in sustaining the conclusion of the commission which is apparently based upon the burden of proof

imposed upon the applicant where, as here, the monopolistic use of the public highway has been granted, and disregarding the force of the presumption of law as to the benefits to the public of competition."

This seems to be the contention most heavily relied upon by the petitioner on this appeal.

Petitioner bases a good deal of its argument upon the fact that in Case No. 1, Timm is the sole common motor carrier operating between the points named. By denying the application of the petitioner to serve the same route the commission creates a monopoly for that service, contrary to the common law, which favors competition.

This contention was set at rest more than thirty-five years ago, in the case of *Calumet Service Co. v. Chilton* (1912), 148 Wis. 334, 135 N. W. 131. While that case related to a public utility the legislature has the same power of regulation in the public interest over a common carrier that it has over a public utility. In that case an indeterminate permit had been granted to the Calumet Service Company, a public utility, on December 21, 1907. The utility was not rendering satisfactory service and on December 23d the city petitioned the railroad commission to grant it a certificate of public convenience and necessity, thus authorizing another public utility in the city. The proceedings were dismissed because of the existing public utility and defendant's failure to proceed in reference thereto as contemplated by the public utility law. In March, 1908, the city council submitted the matter of building a lighting plant to the electors who voted favorably. Thereafter the council voted to issue bonds. The action was begun by the utility to enjoin the city from proceeding with the erection of the proposed plant. The contention made in this case is substantially the same as that made in *Calumet Service Co. v. Chilton, supra.* The court said (p. 357):

"In consideration of submitting to full control by the commission and the right of the municipality, at its option, to take

over the property as indicated, certain conditions and limitations in favor of the grantee are attached to the new privilege. The dominant feature thereof is that the franchise shall not only be perpetual, subject to the conditions and limitations of the law,—indeterminate as it is said,—but shall be subject to such conditions exclusively. In other words, the idea is that the grantee, under state control, and subject to prescribed limitations and supervision, shall have a 'monopoly,' as it has been several times called by the railroad commission, in its administrative work, and by this court, within the field covered by the privilege, as to rendering the particular public utility service, whether directly or indirectly, to or for the public.

" . . . A privilege of that sort, where there is a consideration equivalent to the public, though often spoken of as a 'monopoly' is essentially different from one of the character regarded as odious at common law and prohibited in many state constitutions; a privilege from the sovereign to the individual as a mere favor to the latter for his aggrandizement, or as such and the personal advantage of the individual sovereign grantor, the thing granted being by way of limitation, of what would otherwise be of common right, to the particular grantee. The term 'monopoly' as it has been used to characterize the privilege in question, has been sanctioned in many jurisdictions, they sometimes differentiating it from 'monopoly,' in the offensive sense, and sometimes not, it being assumed, from the very nature of the case, that the word would be taken in its popular and common, rather than in its technical sense. In this line to justify, or rather explain the use of the term by the commission and the court, reference may be had to the following illustrations: [citing a number of cases.] In the latter case [*International T. C. Co. v. Hanks D. Asso.* 111 Fed. 916] it is said that the word 'monopoly' as now commonly used, and used in the patent law, is not a monopoly at all in the ancient sense. According to the logic of Judge STORY in the *Charles River Bridge Case* [11 Pet. 420], to be such the privilege must not only be made exclusive by sovereign authority but be something theretofore of common right."

The general rule is that a certificate of convenience and necessity may not be granted where there is existing service in operation over the route applied for, unless it is required in

the public interest.    Anno. 67 A. L. R. 957.    Note and cases cited.

'In the case of *Packard v. Banton* (1923), 264 U. S. 140, 144, 44 Sup. Ct. 257, 68 L. Ed. 596, a statute requiring that a person operating motor vehicles carrying passengers for hire did not contravene the constitution because it required the operator to give what was for him an excessive bond, the court said:

"If the state determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire, there is nothing in the Fourteenth amendment to prevent.    The streets belong to the public and are primarily for the use of the public in the ordinary way.    Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the legislature deems proper.    Neither is there substance in the complaint that streetcars and omnibuses are not included in the requirements of the statute.    The reason appearing in the statute itself, for excluding them is that they are regulated by the public service commission laws, and this circumstance, if there were nothing more, would preclude us from saying that their noninclusion renders the classification so arbitrary as to cause it to be obnoxious to the equal protection clause.    [citing.]

"  . . . Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance or permission.    In the latter case the power to exclude altogether generally includes the lesser power to condition and may justify a degree of regulation not admissible in the former. See *Davis v. Massachusetts,* 167 U. S. 43."

It is clear from the authorities that the refusal to grant a second certificate of convenience and necessity does not offend either the constitution or a valid statute enacted under it, even if such refusal results in the route being served by a single common motor carrier.    If the operations of common motor carriers are contrary to the public interest they may be curtailed or prohibited.

. The argument addressed to this court upon this point might much more properly be addressed to the legislature. The legislature has prescribed a standard for the granting or disallowance of petitions for a certificate, the commission clearly acted within the authority granted to it, and the contention that by such action it disregarded the presumption as to benefits .of competition is clearly untenable.

The object of regulation of common motor carriers is to promote the public welfare. A common motor carrier being subject to regulation, if it does not render adequate service it may be compelled to do so, or its license be revoked, or a competing common motor carrier may be licensed. Monopoly signifies the sole power of dealing in an article or doing a specified thing either generally or in a particular place. No common motor carrier has an exclusive right to transport goods between two certain termini. There are other common carriers than common motor carriers competing for the same business.

The next contention of the petitioner is that the conclusion of the commission was affected by other errors of law and erroneous inferences of fact which were not supported by the record. We have carefully gone over these criticisms which relate mainly to the statements of fact and mental processes by which the commission arrives at its final conclusions. The case designated as Case No. 1, service between Beloit, Janesville, Edgerton, Stoughton, and Madison and other points served by Carl Timm, a common motor carrier doing business as Timm Transit, illustrates as well as any situation in the record the contentions of the petitioner here. In considering the claim of petitioner to be granted license to compete with Timm upon the route between Madison and Beloit, the commission said:

"Concerning the proposed operation between Madison and Beloit and larger intermediate points, applicant presented testimony of Madison witnesses that Timm's pickups are made too early in the day, are not reliable, and frequently are not made

for several days despite complaints to the union terminal where Timm vehicles dock. A Janesville witness representing Janesville's largest industry, called by applicant, said he had no complaint about Timm's service. Testimony of three Edgerton witnesses called by applicant was contradictory, with one satisfied, another dissatisfied with overnight service from Madison, and the third dissatisfied with Timm's service between Stoughton and Edgerton. Beloit witnesses said Timm's service was poor. Stoughton witnesses were indefinite.

"Timm presented testimony that he had received no complaints from the Madison witnesses, that consignees of such shippers had told him his service was satisfactory, that Madison shippers do not always have shipments ready when they say they will, and that only one half the capacity of his northbound trucks and one fifth the capacity of his southbound trucks are used by shippers between Madison and Beloit. He described wartime difficulties in getting adequate truck facilities and experienced drivers due to material and manpower shortages, which have since been relieved. He presented witnesses from Madison, Beloit, and Janesville who testified that his service was satisfactory and gave evidence of complaints he had heard about Gateway's service in this area."

There is substantial evidence to sustain the finding of the commission that the service being rendered by Timm was adequate.

With respect to the effect of the granting of the petition upon already existing services the commission said:

"Applicant's proposed competition, moreover, is, with some exceptions, competition with existing carriers for traffic between key points, earnings on which make it possible for such carriers to provide service to small communities along their routes. For example, it is the proposal of Gateway to compete with the Timm Transfer operation between Madison and Beloit for traffic between the larger points only, with no service proposed to smaller inland and off-route points which Timm also serves. Gateway is primarily a long-distance hauler of large shipments; Timm is a short-line hauler of small package freight. Gateway refuses to accept interstate shipments of

less than ten thousand pounds at many points it serves; no Wisconsin intrastate common motor carrier during or since the war has requested or has been authorized by the commission to embargo single-line freight, despite equipment shortages, until recently."

As already stated, sec. 194.23, Stats., requires that before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served. Sec. 194.18 makes it the commission's duty, among other things, so to regulate common motor carriers as to "prevent unnecessary duplication of service between such common motor carriers or between them and the lines of competing steam and electric railroads."

It appears that in the territory under consideration there are available most or all of eight distinct classes of property transportation:

(1) Private vehicles of consignor or consignee.

(2) Parcel post.

(3) Parcel transportation by bus line.

(4) Railway express.

(5) Railway freight service.

(6) Railway supplemental truck service.

(7) Common motor carriers, including both single line and joint line service.

(8) Contract motor carriers.

Of these eight classes of transportation the six last named are subject to regulation by the commission as to service rates.

It is apparent from the record that the commission, in arriving at its determination whether a petition such as that under consideration here should be granted, must consider other factors than the matter of competition between common motor carriers.

First, the petition is not to be granted if the commission does not find that public convenience and necessity requires it.

Second, sec. 194.23 (1), Stats., provides:

". . . The commission shall have power, as the public interest may require, upon a finding of public convenience and necessity, to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought. . . . Before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways."

The court on review is required by statute to give effect to the legislative command that "upon such review due weight shall be accorded to the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." Sec. 227.20 (2), Stats.

Whether the granting of the franchise or amendment sought is in the public interest presents a matter for the exercise of legislative discretion by the commission. It cannot be answered by the application of a proposition of law. It is clear therefore that a trial court must have compelling reasons for reversal where the final conclusion of the agency is based upon a determination which is not only highly discretionary but rests upon the agency's finding as to what is necessary and convenient in the public interest, two terms of indefinite and varying content. We concur in the conclusion of the trial court that such reasons are not present in this case. Other questions raised in briefs of counsel have been considered but we find no reversible error.

*By the Court.*—The order appealed from is affirmed.