ARROWHEAD UNITED TEACHERS ORGANIZATION,
Petitioner-Appellant,†

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent.†

Court of Appeals

*No. 81–1600. Argued March 31, 1982.—Decided October 13, 1982.*
(Also reported in 326 N.W.2d 242.)

For the petitioner-appellant there was a brief submitted by *Judith Neumann* of the *Wisconsin Education*

† Petitions to review granted.

*Association Council* of Madison. Oral argument by *Judith Neumann.*

For the respondent there was a brief submitted by *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general. Oral argument by *John D. Niemisto* of Madison.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.   In this case, the Wisconsin Employment Relations Commission (Commission) ruled that thirteen intern teachers who held one-semester contracts should not be included in a collective bargaining unit with the other eighty fulltime and regular parttime professional employees of the Arrowhead School District (District). The Arrowhead United Teachers Organization (AUTO) argues that the Commission's decision deviates, without explanation, from its prior practice and that it violates the legislature's policy that fragmentation of units should be avoided. Because we find that the Commission deviated from its past practice without a satisfactory explanation, we reverse.

AUTO is a labor union certified by the Commission in August 1979 as the exclusive representative for a bargaining unit of District employees. When AUTO petitioned for the election that led to its certification, AUTO and the District stipulated to the following definition of the unit:

All full-time and regular part-time professional employes of the District, excluding the District Administrator, supervisors, managerial and confidential employes, nonprofessional employes, per diem substitutes and all statutorily excluded employes.

The parties agreed to defer the issue of whether intern teachers were to be included in the unit until after the representation election.

In October 1979, the District filed a petition for unit clarification that asked the Commission to determine whether intern teachers were includable in the bargaining unit. After a hearing, the Commission decided that the interns were not members of the unit.

The Commission first determined that the intern teachers are District employees with full rights to engage in collective bargaining under the Municipal Employment Relations Act (MERA). The interns' status as employees is not at issue here.

The Commission then found that intern teachers and regular teachers perform "similar work under similar conditions . . . ." The Commission concluded, however, that the interns have "no community of interest with the regular teachers" and excluded the interns from the bargaining unit. The Commission looked to the interns' short term of employment and their student status as a basis for concluding that their positions should not be included in the bargaining unit. It concluded that the "aspirations" of the regular teachers are directed toward "a career-length employment," while the interns "can be expected to have interests centering on their opportunities for learning, training, practice and eventual hire elsewhere . . . ." The Commission gave no indication that it had considered the legislature's policy against fragmentation before it excluded the interns from the unit.

AUTO petitioned the circuit court for review of the Commission's decision pursuant to secs. 227.15 and 227.-16, Stats. The circuit court reviewed evidence in the record concerning the interns' job responsibilities and working conditions as compared with those of the teachers and held that the Commission had not abused its discretion in finding that interns and teachers had no community of interest. The circuit court also held that the Commission's decision did not violate the anti-frag-

mentation provision of sec. 111.70 (4) (d) 2a, Stats., because the interns had not indicated that they wanted to be included in the bargaining unit. Accordingly, the circuit court affirmed the Commission's decision.

AUTO appealed from the circuit court's order, and this panel certified the case to the Wisconsin Supreme Court as a case of first impression in this state. The appeal now comes before this court upon denial of certification by the supreme court.

The scope of judicial power to review the Commission's decision is established by sec. 227.20, Stats. The scope of our review is the same as that of the circuit court. *Frito-Lay, Inc. v. Wisconsin Labor & Industry Review Commission,* 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (Ct. App. 1980). AUTO contends that the disputed element of the Commission's determination concerning "community of interest" between the interns and the regular teachers is a conclusion of law; it further contends that sec. 227.20 (8), Stats., which focuses in part on whether an agency has been consistent in its interpretation of a statutory provision, sets the proper standard of review. We agree.

MERA authorizes the Commission to determine appropriate bargaining units for the purpose of collective bargaining. Sec. 111.70 (4) (d) 2a, Stats. In determining bargaining units, the Commission "may decide whether, in a particular case, the employes in the same or several departments, divisions, institutions, crafts, professions or other occupational groupings constitute a unit." The concept "community of interest" does not appear in the statute as a necessary criterion for determining which employees constitute a unit. It is undisputed, however, that in the past, the Commission has looked to the "community of interest" among employees as a major factor in determining whether such employees constitute a unit.

The overall determination of whether the intern teachers have a community of interest with the regular teach-

ers is a mixed question of fact and law. Neither party, however, challenges the Commission's findings of fact: that the intern teachers perform "similar work under similar conditions" and that interns, as one-semester employees and university students, have career-development concerns different from those of regular teachers. Whether particular facts fulfill a given legal standard is a question of law. *Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979).

Section 227.20 (8), Stats., sets the appropriate standard for review of an agency's application of a statute to particular facts where the challenge is to the consistency of the agency's practice in construing the statute. This court must reverse or remand the case if it finds that:

[T]he agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with . . . a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a . . . statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

Sec. 227.20 (8), Stats. The Commission's construction of sec. 111.70 (4) (d) 2a, Stats., is not binding on this court. *See Pigeon v. Department of Industry, Labor & Human Relations,* 106 Wis. 2d 135, 138, 316 N.W.2d 117, 118 (Ct. App. 1981). Nonetheless, under most circumstances, the court will give great weight to the agency's construction of the statute because the agency is charged with the duty of applying the law. *Id.* Section 227.20 (8), Stats., "states an unusual review standard for the court," however, in that an agency must offer an explanation that is satisfactory to the court whenever an agency action is a "deviation or inconsistency compared to the agency's prior policy or practice." *Wisconsin Association of Manufacturers & Commerce, Inc. v. Public Service Com-*

*mission,* 100 Wis. 2d 300, 305, 301 N.W.2d 247, 250 (1981).

AUTO argues that the Commission abused its discretion under sec. 111.70(4)(d)2a, Stats., because in deciding that the interns did not share a "community of interest" with the regular teachers, it deviated from its previously well-established definition of the concept and did not offer a satisfactory explanation for doing so. AUTO argues that the Commission's long-standing practice has been to examine the objective characteristics of work performed by employees and to determine on that basis whether the employees' positions were similar enough to establish a "community of interest" among those holding the positions. AUTO asserts that the Commission's focus on the actual work performed rather than on the personal attributes of the particular individuals performing the work at any given time has created stable bargaining units and has assured that all bargaining unit work will be covered by the collective bargaining agreement negotiated by the unit representative and the employer.

AUTO contends that in the instant case, the Commission departed from its prior test for "community of interest" by ignoring the similarity of the work performed by interns and teachers and looking, instead, to what it supposed were differing career aspirations as a basis for dividing the two groups into separate collective bargaining units. AUTO argues that a test for "community of interest" that focuses on the personal concerns of the present incumbents of positions rather than on the kind of work that the positions require undermines the collective bargaining process by splintering occupational groupings, invading the privacy of individual workers, and depriving workers of their right to deal with their employers collectively. AUTO suggests that a subjective test may also divide workers into separate units on the

basis of differing interests that constitute only permissive subjects of collective bargaining. For example, the District may have no duty to bargain with the interns over the interns' learning and job-seeking opportunities. *See Beloit Education Association v. Employment Relations Commission,* 73 Wis. 2d 43, 66–67, 242 N.W.2d 231, 242 (1976).

We agree with AUTO that the Commission has departed from its prior practice with respect to "community of interest." In the past, as a general policy, "[w]hen clarifying a bargaining unit, the Commission has given primary and controlling emphasis to the *actual duties and responsibilities* of the individual holding the position in question." (Emphasis added.) *Bangor Education Association,* WERC Dec. No. 14699 (June 9, 1976). The Commission's analysis has focused on whether "the duties of the disputed *positions*" are similar to "the duties performed by bargaining unit employes." (Emphasis added.) *Winnebago County (Department of Social Services),* WERC Dec. No. 10304–A (September 5, 1979). To our knowledge, the Commission has never found that individuals performing similar work under similar conditions lacked a community of interest.

So far as this court has been able to determine, the Commission has never questioned that all regular full-time teachers in a given school district share a community of interest. Further, the Commission has consistently found that the community of interest among classroom teachers is not dispelled because some of the teachers hold temporary contracts. *Stoughton Joint School District No. 3,* WERC Dec. No. 15458–A (March 30, 1979); *Madison Metropolitan School District,* WERC Dec. No. 14161–A, 6746–C (January 7, 1977). Finally, the Commission has found that a community of interest still exists even where the temporary teachers have student status. *Stoughton,* WERC Dec. No. 15458–A.

Neither in the decision under review nor on this appeal has the Commission cited a single one of its prior decisions on "community of interest" to support a contention that its construction of the concept in the instant case is consistent with its past practice. This court concludes that the Commission deviated from its past definition of "community of interest" in determining that intern teachers should be excluded from the bargaining unit of "all full-time and regular part-time professional employes of the District" because interns are short-term employees and college students. Since the Commission was silent as to its reasons for altering the "community of interest" concept, this court further concludes that the Commission did not give a satisfactory explanation for its deviation from its past practice.

AUTO next argues that the Commission abused its discretion under sec. 111.70(4)(d)2a, Stats., because in excluding the thirteen interns under temporary contract from the unit that included the other eighty professional employees of the District, it deviated from its past practice concerning unit fragmentation in school districts and ignored an express statutory limit on its discretion. We agree.

MERA states that the Commission "shall whenever possible avoid fragmentation by maintaining as few units as practicable in keeping with the size of the total municipal work force." Sec. 111.70(4)(d)2a, Stats. On prior occasions, the Commission has construed the statute as a mandate to maintain only one bargaining unit of professional employees in a school district unless circumstances demonstrate that a subgroup of employees would be able to engage in meaningful collective bargaining on their own. In 1976, the Commission stated that "[i]n order to carry out the principle of anti-fragmentation," it had

"determined that all occupants of professional positions in a K through 12 school setting who work with students and teachers . . . shall, absent special circumstances, be included in a unit consisting primarily of teachers." *Joint City School District No. 1, City of Superior*, WERC Dec. No. 13238–A (June 29, 1976).

In January 1977, the Commission held that the anti-fragmentation principle required it to include temporary teachers employed by the Madison Metropolitan School District in a bargaining unit with all regular teachers in the Madison district. *Madison Metropolitan School District*, WERC Dec. No. 14161–A, 6746–C. The Commission noted that sec. 111.70(4)(d)2a, Stats., *"mandates* the Commission to avoid the fragmentation of bargaining units" (emphasis added) and concluded that if the temporary teachers were not included in the unit with the regulars, "they would be in limbo and a fragmentized group of employes would exist." *Id.* In February 1979, the Commission reiterated that under the anti-fragmentation principle, the Commission may not create a unit so fragmentized as to be "inadequate for viable collective bargaining." *Lincoln County (Department of Social Services)*, WERC Dec. No. 16845 (February 16, 1979).

Only once has the Commission found "special circumstances" that justified two collective bargaining units of professional employees within one school district. The Commission permitted 108 psychologists employed by the Milwaukee Board of School Directors to constitute a separate unit where the bargaining history in the district, the fourteen-year existence of a separate psychologists' organization and the substantial number of psychologists employed by Milwaukee assured that "a separate unit of psychologists *will be able to engage in meaningful collective bargaining.*" (Emphasis added.) *Milwaukee Board of School Directors*, WERC Dec. No. 13737–G, 16009–D (November 16, 1979).

The decision under review excluded the thirteen one-semester teaching interns from the District bargaining unit without any mention of the Commission's policy against multiple professional units in a school-district setting and without any discussion of whether the interns would be able to engage in meaningful collective bargaining on their own. A major purpose of MERA is to promote peaceful labor relations by giving "municipal employes so desiring" an "opportunity to bargain collectively with the municipal employer . . . ." Sec. 111.70 (6), Stats. Employees consigned to a unit that is inadequate for viable collective bargaining are deprived of the opportunity to engage in collective bargaining should they so desire. By the Commission's own previously established criteria, the interns—few in number and on temporary contract—would be left "in limbo" as a result of the Commission's decision. The Commission reasoned, in effect, that because the interns have distinct interests, they must be put in circumstances where they will have no meaningful opportunity to put those interests forward. The Commission's conclusion is contrary to its own past practice and contrary to a major purpose of MERA.

We find that the Commission abused its discretion by deviating without explanation from its prior practice concerning "community of interest" and unit fragmentation. We reverse the order of the trial court and remand to the Commission with directions to find that the intern teachers are members of the bargaining unit.

*By the Court.*—Order and judgment reversed.